Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/10/2017 08:11 AM CDT

Alexandra Courtney, appellant,
v. Rene Jimenez, appellee.
___ N.W.2d ___

Filed September 26, 2017.    No. A-16-868.

1. **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court resolves independently of the trial court.
3. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
4. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.
5. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation.
6. **Moot Question.** As a general rule, a moot case is subject to summary dismissal.
7. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.
8. ____: ____. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.

9. **Motions to Vacate: Time.** A court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute.

10. **Judgments: Statutes: Time.** The 5-day period set forth in Neb. Rev. Stat. § 42-925(1) (Reissue 2016) is not central to the purpose of the domestic abuse protection order statutes; once the ex parte protection order has been granted, the fundamental purpose of the statute has been satisfied.

11. **Pleadings: Time.** The 5-day period to file a show cause hearing request as set forth in Neb. Rev. Stat. § 42-925(1) (Reissue 2016) is directory and not mandatory. Accordingly, failing to file a request for a show cause hearing within that 5-day period does not preclude the later filing of a motion to bring the matter back before the court, including the filing of a motion to vacate an ex parte order.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

Jeff T. Courtney, P.C., L.L.O., for appellant.

Hugh I. Abrahamson, of Abrahamson Law Office, for appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Bishop, Judge.

## INTRODUCTION

An ex parte domestic abuse protection order was entered by the Douglas County District Court in favor of Alexandra Courtney and against Rene Jimenez. Jimenez did not request a hearing to challenge the ex parte order within 5 days as set forth in Neb. Rev. Stat. § 42-925(1) (Reissue 2016); however, Jimenez subsequently filed a motion to vacate the order. Courtney appeals from the district court's order vacating the ex parte order. We affirm.

## BACKGROUND

Courtney filed a petition and affidavit for an ex parte domestic abuse protection order on May 6, 2016. The petition

indicates that Courtney and Jimenez have a 3-year-old child together, that a "Paternity/Custody" case was pending between them, and that another protection order against Jimenez (in favor of Courtney) was set to expire on May 8. Where the form requested the facts of the most recent incidents of domestic abuse, Courtney described the following incidents: First, she alleged that on April 29, 2016, Jimenez sent her a text message "about our daughter and death," which she took as a death threat to her (Courtney). In a second incident, on October 16, 2015, Jimenez told a mediator that "the protection order would be over soon [and] 'he'll be able to handle this himself.'" Courtney said that "[t]his made me very afraid because of the way I know that he handles things." Courtney next listed as an incident of domestic abuse, "See previous affidavit submitted on 5/7/2015." Finally, Courtney alleged that on May 6, 2016, after she spoke to the county attorney about Jimenez' April 29 text message, she was informed that the text message had become part of a "'warrant case'"; she thought this would "further provoke" Jimenez.

The district court entered an ex parte domestic abuse protection order against Jimenez on May 6, 2016. The order stated:

> If the respondent wishes to appear and show cause why this order should not remain in effect for a period of one year, he or she shall affix his or her current address, telephone number, and signature on the **Request for Hearing** form provided and return it to the clerk of the district court within five (5) days after service upon him or her.

(Emphasis in original.)

Jimenez was served on May 17, 2016, but did not return the "Request for Hearing" form within 5 days thereafter. Instead, Jimenez filed a "Motion to Dismiss Protection Order" on August 1. He requested that the district court vacate the protection order because "reading [Courtney's] Petition and Affidavit to Obtain Domestic Abuse Protection Order in the most favorable light to [her], it is readily apparent that [she]

has failed to allege the facts necessary" for the court to issue a protection order. While the document was titled "Motion to Dismiss Protection Order," we will refer to it as a motion to vacate because it asked the court to vacate the protection order and because the district court's later order referred to it as a motion to vacate.

The district court held a hearing on Jimenez' motion to vacate on August 9, 2016. At the hearing, Jimenez' counsel argued that the allegations in Courtney's petition and affidavit did not meet the statutory criteria for a domestic abuse protection order because the text message was not threatening and Jimenez was only seeking suggestions on how to explain a family death to their daughter. Jimenez' counsel stated:

> The only reason I can think that there would be a protection order here is to try and provoke my client, and that's not the use of a protection order. My client has done nothing that would warrant the issuance of a protection order, and I'd ask that you set it aside.

Courtney's counsel responded:

> The problem, Judge, is that there is probably more of a record that would have been created in support of the protection order, at least through the testimony of my client and any of her witnesses, but there was no hearing and nothing was placed on the record because . . . Jimenez did not ask for a hearing.

Courtney's counsel further argued that Courtney's fears were justified because of her past experiences with Jimenez, and her counsel asked that a hearing be held on the merits of the petition and affidavit, wherein Courtney could "fill in the gaps" with her testimony.

The district court said that it understood both parties' positions, but determined that Courtney's petition and affidavit failed to allege enough facts to support the protection order. The court acknowledged the possibility of other evidence but told the parties that "in a hearing on a protection order, the Court is confined to what's alleged in the Petition."

Although the court decided the protection order should be vacated, it informed Courtney she could refile for an order, and the court further directed that an order would be entered in the pending paternity case that Jimenez was to have "absolutely no contact" with Courtney whatsoever. Courtney filed a timely appeal.

## ASSIGNMENTS OF ERROR

Courtney assigns, restated, that the district court erred when it vacated the domestic abuse protection order against Jimenez because (1) Jimenez' motion to vacate was untimely and was not a proper pleading under the domestic abuse protection order statutes and (2) Courtney alleged facts sufficient to support the issuance of the protection order.

## STANDARD OF REVIEW

[1] A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

[2] Statutory interpretation presents a question of law, which an appellate court resolves independently of the trial court. *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013).

[3,4] Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. *Id*. When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Id*.

## ANALYSIS

*Mootness.*

Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction.

*In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011). While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000). In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *Glantz v. Daniel, supra*. Therefore, we first consider whether this appeal is moot, since the protection order in this case would have already expired had it not been vacated.

[5,6] A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. See *id.* As a general rule, a moot case is subject to summary dismissal. *Id.*

The district court entered a temporary ex parte protection order on May 6, 2016. Jimenez was served with the order on May 17. Jimenez did not request a show cause hearing within 5 days of service, so the temporary order became a final ex parte protection order, valid until May 6, 2017. See § 42-925(1). The district court vacated the protection order on August 9, 2016, after a hearing on Jimenez' motion to vacate. Courtney filed a notice of appeal on September 8; however, she did not send a copy of the praecipe for bill of exceptions to the court reporter as required by appellate court rules. This resulted in a delay in the preparation of the appellate record, which was followed by multiple extensions of brief dates filed by Courtney. These delays have contributed to this appeal coming before this court after what would have been the expiration date of the protection order, had it not been vacated. Since this court cannot reinstate an expired protection order, this appeal is moot.

[7,8] However, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Glantz v. Daniel, supra*. When determining

whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. *Id.*

This case is similar to *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013), where we applied the public interest exception to a moot case concerning an ex parte harassment protection order. Individuals subject to an ex parte harassment protection order have 5 days from the date of service to request a hearing to show cause why the order should not remain in effect for 1 year. See Neb. Rev. Stat. § 28-311.09(7) (Reissue 2016). In *Glantz*, a hearing was requested more than 5 days after service of the ex parte order, but the district court nevertheless allowed the hearing and dismissed the ex parte harassment protection order. On appeal, it was argued that the district court erred by allowing the show cause hearing when it had not been requested within the 5 days specified by statute. Courtney makes a similar argument in the present appeal, but in the context of the domestic abuse protection order statutes rather than the harassment protection order statutes at issue in *Glantz*.

However, as in this case, the harassment protection order in *Glantz* had expired when the case came before this court on appeal, rendering the appeal moot. In *Glantz*, we noted that the case involved the interpretation of a statute and that there was no previous interpretation of the time limitation contained in § 28-311.09(7); thus, the case raised a public question and our decision on the issue would provide valuable guidance to lower courts. Further, because of the multitude of harassment protection order cases filed in Nebraska, this court concluded that the same question would likely arise in the future. *Id.* Therefore, we found that the public interest exception to the mootness doctrine applied and we addressed the merits of the case.

While we are mindful that the public interest exception should not be used so often that it circumvents the mootness doctrine, this case presents a sufficiently important issue to merit consideration. See *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014). Like *Glantz v. Daniel, supra*, this case raises a statutory question more public in nature than private, an authoritative adjudication for future guidance is desirable, and there is a likelihood of future recurrence of the same or a similar problem. Similar to *Glantz*, there is no previous interpretation of how the 5-day time requirement specified in § 42-925(1) for requesting a show cause hearing to challenge an ex parte domestic abuse protection order may impact a later request for hearing. Additionally, in this case, we are asked to consider whether a party's failure to request a hearing in accordance with § 42-925(1) should prevent a district court from exercising its inherent power to vacate a prior order. Accordingly, we conclude the public interest exception to the mootness doctrine applies, at least in part, to the present appeal.

*District Court's Inherent*
*Power to Vacate.*

Courtney argues that the district court should not have considered Jimenez' motion to vacate because he did not timely file his request to contest the protection order. She argues that the 5-day deadline in § 42-925(1) is "a 'hard and fast' deadline" and that "[t]he five day period is similar to a statute of limitations, or the 30 day period in which a notice of appeal must be filed following entry of a final order of a trial court." Brief for appellant at 7. Courtney categorizes the motion to vacate as "a time barred, inappropriate collateral attack on a valid order issued by the court. Not only was the five day period not adhered to, the 30 days in which Jimenez could have appealed the entry of the order expired 38 days before the motion to dismiss was filed." *Id*.

[9] We initially draw a distinction between Jimenez missing the statutory 5-day period for requesting a show cause hearing as described in § 42-925(1) and his filing a motion to vacate the protection order. With regard to a motion to vacate, a court has inherent power to vacate or modify its own judgments at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). The local rules of the district court for the Fourth Judicial District, applicable here, provide that the term of the court runs from January 1 to December 31 of the calendar year. See Rules of Dist. Ct. of Fourth Jud. Dist. 4-1 (rev. 1995). The ex parte order was filed on May 6, 2016, and Jimenez filed his motion to vacate on August 1. Accordingly, Jimenez filed his motion to vacate within the court's term, and the court had the inherent power to vacate or modify its prior order.

In considering the motion to vacate, the district court determined that Courtney's petition and affidavit failed to allege enough facts to support the protection order, stating, "The problem that this court has is I don't believe there's enough — when I read the Petition and the affidavit, I don't think there's enough in the Petition itself for a protection order." The court acknowledged the possibility of other evidence but told the parties that "in a hearing on a protection order, the Court is confined to what's alleged in the Petition." The court said the protection order should be vacated, but "[s]hould you [Courtney] want an order . . . and you feel the need for an order, you would have to put those things in the Petition itself so that we could have a hearing and address them." The discussion between the court and counsel indicates that the paternity matter was scheduled for trial "this coming Monday," "[t]he 15th." The court noted that a different district court judge entered the protection order and that it "is always problematic when more than one judge is involved in the proceedings." The court vacated "this protection order at

this point in time," but stated that an order was to be entered in the paternity case that Jimenez was "to have absolutely no contact" with Courtney whatsoever.

Courtney argues, however, that "[a]ny argument from Jimenez that the trial court's equity powers allow it to vacate the *ex-parte* order and dismiss the petition and affidavit" is without merit. Brief for appellant at 8 (emphasis in original). The totality of Courtney's argument in support of this assertion is limited to her reference to Neb. Rev. Stat. § 42-924(5) (Reissue 2016), which states, "If there is any conflict between sections 42-924 to 42-926 and any other provision of law, sections 42-924 to 42-926 shall govern." Courtney does not explain how the district court's inherent power to vacate orders within its court term conflicts with these statutory sections. Our review of the listed statutes reveals no apparent conflicts, and in light of Courtney's failure to provide any discussion of the same, we decline to consider this assertion further. See *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015) (court declined to address appellant's conclusory arguments which had no supporting explanation).

Finding no conflict between § 42-924(5) and the district court's inherent power to vacate a prior order entered within its court term, we find no error in the district court's order dismissing Courtney's petition and vacating the ex parte protection order.

*Failure to Follow Deadline*
*in § 42-925(1).*

Courtney argues that § 42-925(1) sets forth "a 'hard and fast' deadline" for "action on the part of Jimenez." Brief for appellant at 7. Courtney claims the 5-day period is similar to a statute of limitations, and she suggests that failing to request a hearing within those 5 days should preclude any subsequent action on a final protection order, including the filing of the motion to vacate. We do not read the statute to create such limitations.

As noted previously, this court has addressed a similar 5-day statutory requirement with regard to harassment protection orders. In *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013), a request for hearing on an ex parte harassment protection order was challenged as being untimely, since it was filed outside the 5-day deadline in § 28-311.09(7). This court concluded that the 5-day period to request a hearing was directory rather than mandatory. We determined that the deadline for requesting a hearing regarding a harassment protection order did not affect the underlying goal of the harassment statutes, e.g., protecting victims of stalking or harassment. The immediate protections afforded to stalking or harassment victims was accomplished by allowing the courts to enter an ex parte order upon the filing of a petition. We found no error in the district court's decision to proceed to hearing, nor in its decision to then dismiss the protection order petition and ex parte order.

In considering principles of statutory construction, our Supreme Court has stated:

The general rule is that the word "shall" in a statute is mandatory and inconsistent with the idea of discretion. But we construe the word "shall" as permissive if the spirit and purpose of the legislation requires such a construction. No universal test distinguishes mandatory from directory provisions. Broadly, provisions that relate to the essence of the thing to be done are mandatory while provisions for which compliance is a matter of convenience rather than substance are directory. Put another way, we have been reluctant to deem provisions mandatory if something less than strict compliance would not interfere with the statute's fundamental purpose.

*We have frequently applied these principles to statutory time limits. In most cases, we have decided that provisions specifying the time by which something "shall" be done are merely directory.* But we have given "shall" a

mandatory construction if completion of the action within the specified period was essential to accomplishing a principal purpose of the law.

*D.I. v. Gibson*, 291 Neb. 554, 557-58, 867 N.W.2d 284, 287 (2015) (emphasis supplied). The footnote to the italicized language above identifies a number of supporting cases where statutory time limits were determined to be directory rather than mandatory, including *Glantz v. Daniel, supra*.

In the present matter, the Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016), provides that a victim of domestic abuse may file a petition and affidavit for a protection order with the clerk of the district court. § 42-924. Section 42-925 provides that domestic abuse protection orders, as defined under § 42-924, may be issued ex parte. If a court issues a domestic abuse protection order ex parte:

[S]uch order is a temporary order and the court shall forthwith cause notice of the petition and order to be given to the respondent. The court shall also cause a form to request a show-cause hearing to be served upon the respondent. *If the respondent wishes to appear and show cause why the order should not remain in effect, he or she shall affix his or her current address, telephone number, and signature to the form and return it to the clerk of the district court within five days after service upon him or her*. Upon receipt of the request for a show-cause hearing, the request of the petitioner, or upon the court's own motion, the court shall immediately schedule a show-cause hearing . . . . If the respondent does not so appear [at the hearing] and show cause, the temporary order *shall* be affirmed and shall be deemed the final protection order. If the respondent has been properly served with the ex parte order and fails to appear at the hearing, the temporary order *shall* be affirmed and the service of the ex parte order shall be notice of the final protection

order for purposes of prosecution under subsection (4) of
section 42-924.

§ 42-925(1) (emphasis supplied).

The fundamental purpose of the Protection from Domestic
Abuse Act is "to provide abused family and household mem-
bers necessary services including shelter, counseling, social
services, and limited medical care and legal assistance." See
§ 42-902. As with harassment protection orders, immediate
protection is afforded under the domestic abuse protection
order statutes by allowing courts to enter an ex parte order
upon the filing of a petition and affidavit. Upon entry of such
an ex parte order, the respondent is immediately enjoined from
engaging in any of the actions set forth in § 42-924, as may be
ordered by the court.

[10,11] We see no reason why the 5-day period for domes-
tic abuse protection orders set forth in § 42-925(1) should
be treated any differently than the 5-day rule for harassment
protection orders set forth in § 28-311.09(7), see *Glantz v.
Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013), or the 7-day
rule for emergency protective custody hearings as addressed
in *D.I. v. Gibson*, 291 Neb. 554, 867 N.W.2d 284 (2015). As
stated by our Supreme Court, "We have noted our reluctance
to find statutory time limits mandatory if they are not central
to the purpose of the statute." *Id.* at 561, 867 N.W.2d at 289.
The 5-day period set forth in § 42-925(1) is not central to
the purpose of the domestic abuse protection order statutes.
Although prompt responses to ex parte domestic abuse protec-
tion orders no doubt encourage orderly and rapid resolution of
challenges to such orders, once the ex parte protection order
has been granted, the fundamental purpose of the statute has
been satisfied. We conclude the 5-day period to file a show
cause hearing request as set forth in § 42-925(1) is directory
and not mandatory. Accordingly, failing to file a request for a
show cause hearing within that 5-day period does not preclude
the later filing of a motion to bring the matter back before the

court, including the filing of a motion to vacate an ex parte order as was filed in this case.

*Sufficiency of Evidence.*

Courtney argues that she alleged facts sufficient to support the issuance of the protection order and that therefore, it should not have been vacated. We need not address this argument because even if we were to determine that Courtney alleged sufficient facts to support the issuance of an ex parte protection order, we cannot provide her with a remedy because the underlying protection order would have expired on May 6, 2017. Unlike interpreting § 42-925(1), whether Courtney alleged sufficient facts for an ex parte protection order is of a private nature, it does not demand an authoritative adjudication for future guidance of public officials, and because of the unique facts of her case, the same or a similar problem is not likely to recur. See *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000). We find no exception to the mootness doctrine under which we can address sufficiency of the evidence. See *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

The district court's order dismissing Courtney's petition and vacating the ex parte domestic abuse protection order is affirmed.

Affirmed.